MF:AW
F.# 9701943
ld.

IN CLERKS OFFICE
U.S. DISTRICT COURT E.D. N.Y.
★ 01, 1997 ★
P.M.
TIME

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

LOUIS MALPESO, JR.,
JOSEPH DIBELLA, and
ROBERT CATOGGIO,

Defendants.

- - - - - - - - - - - - - - - - - - X

INDICTMENT

Cr. No. CR 97-398 (RJD)
(T. 18, U.S.C., §§ 2, 371, 1952, 3551 et seq.; T. 15, U.S.C., §§ 78j(b) and 78ff)

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment:

The Defendants

1. The defendant LOUIS MALPESO, JR., was an associate of the Colombo Organized Crime Family of La Cosa Nostra. The defendants JOSEPH DIBELLA and ROBERT CATOGGIO were stock brokers and associates of the defendant LOUIS MALPESO, JR.

First Colonial

2. First Colonial Ventures, Ltd. ("First Colonial") was a Utah corporation, with its principal place of business in Los Angeles, California. First Colonial stock was traded publicly, but the company's stock was not listed on any national stock exchange.

3. The defendants JOSEPH DIBELLA and ROBERT CATOGGIO controlled a large block of First Colonial stock.

#2

Market Manipulation

4. Generally, the price of a share of stock varies depending on, among other factors, the supply of and demand for the stock. For example, when a company's stock is in demand and investors purchase the stock in large volume, the price of the stock tends to rise. Conversely, when there is little demand for a stock and investors sell the stock in large volume, the price tends to decrease. The interaction of supply and demand reflects a collective marketplace judgment of the value of the stock.

5. The term "market manipulation" refers to conduct designed to deceive investors by artificially controlling or fraudulently affecting the market price of stock. By causing specific purchases of stock to be made and by fraudulently reducing the supply of or fraudulently increasing the demand for the stock, an individual can deliberately inflate the market price of the stock.

The Loanshark Debt

6. In or about and between January and June, 1995, the defendant LOUIS MALPESO, JR. loaned approximately $100,000 to John Burnham, a stock broker. The loan bore an illegal interest rate of three percent, or $3000, per week.

7. Burnham was unable to keep up with the interest payments due on the loanshark debt. As a result, the amount Burnham owed LOUIS MALPESO, JR. in principal and accumulated interest began to grow.

8. The defendant LOUIS MALPESO, JR. threatened Burnham with physical harm, including death to Burnham and his family, if Burnham continued to fail to make payments on the illegal debt.

9. As a result, Burnham went to the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office for the Eastern District of New York for protection in exchange for his agreement to cooperate with law enforcement.

The Undercover Operation

10. To permit Burnham to make tape recordings of targets of the investigation, without being harmed by the defendant LOUIS MALPESO, JR. and his coconspirators, the FBI created fictitious employment for Burnham. An FBI agent (the "Undercover Agent") posed as Burnham's employer at a money management firm (the "Undercover Money Management Firm"). In January 1996, Burnham told the defendant LOUIS MALPESO, JR. that Burnham had obtained employment at the Undercover Money Management Firm.

The Defendants' Fraudulent Schemes

11. As set forth more fully below, in or about and between January 8, 1996 and February 28, 1996, in order to satisfy Burnham's debt and to make additional profits for themselves, the defendants JOSEPH DIBELLA, ROBERT CATOGGIO, and LOUIS MALPESO, JR. engaged in a scheme to use the Undercover Money Management Firm to conduct a fraudulent stock deal. As part of this scheme, the Undercover Agent would purchase First Colonial stock for the accounts of customers of the Undercover Money Management Firm. The First Colonial stock would be purchased from a brokerage firm

controlled by the defendants JOSEPH DIBELLA and ROBERT CATOGGIO, who would deliberately inflate the market price of the stock by market manipulation. In addition, the defendants JOSEPH DIBELLA and ROBERT CATOGGIO would kickback to the Undercover Agent 25% of the price at which the stock was purchased. The defendants agreed to sell $2.5 million in First Colonial stock to the Undercover Agent.

COUNT ONE

12. Paragraphs 1 through 11 of this Indictment are hereby incorporated by reference and realleged as though fully set forth herein.

13. In or about and between January 8, 1996 and February 28, 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LOUIS MALPESO, JR., JOSEPH DIBELLA, and ROBERT CATOGGIO, together with others, did knowingly and willfully conspire:

(a) to devise a scheme and artifice to deprive others of the intangible right to honest services and to obtain money and property by means of false and fraudulent pretenses, representations, promises and the concealment of material facts, and, for the purpose of executing such scheme and artifice, to use the mail and to cause interstate wire communications, in violation of Title 18, United States Code, Sections 1341, 1343 and 1346.

(b) to use and employ manipulative and deceptive devices and contrivances and directly and indirectly (i) employ devices, schemes and artifices to defraud; (ii) make untrue statements of

material facts and omit to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon members of the investing public and other securities firms, in connection with purchases and sales of securities, by use of instruments of communication in interstate commerce and the mails, in violation of Rule 10b-5 of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5 (1995).

16. It was part of the conspiracy that the defendants LOUIS MALPESO, JR., JOSEPH DIBELLA, and ROBERT CATOGGIO would and did arrange with John Burnham and the Undercover Agent for the purchase of a large block of First Colonial stock by customers of the Undercover Money Management Firm at a price that was to be artificially inflated by market manipulation.

17. It was further part of the conspiracy that the defendants LOUIS MALPESO, JR., JOSEPH DIBELLA, and ROBERT CATOGGIO would and did pay kickbacks to John Burnham and the Undercover Agent in order to induce them to purchase First Colonial stock on behalf of customers of the Undercover Money Management Firm.

18. It was further part of the conspiracy that the Undercover Agent would arrange for the First Colonial stock to be held in the accounts of customers of the Undercover Money Management Firm for an extended period of time, so that sales of

the stock would not depress the market value of the First Colonial stock.

19. In furtherance of the conspiracy and to effect the objectives thereof, within the Eastern District of New York and elsewhere, the defendants LOUIS MALPESO, JR., JOSEPH DIBELLA, and ROBERT CATOGGIO and others committed and caused to be committed the following:

OVERT ACTS

a. On or about January 30, 1996, the defendants JOSEPH DIBELLA and LOUIS MALPESO, JR. met with John Burnham in Staten Island, New York.

b. On or about and between February 16, 1996 and February 22, 1996, both dates being approximate and inclusive, the defendant LOUIS MALPESO, JR. made telephone calls from his residence in Staten Island, New York to the Undercover Money Management Firm in Manhattan, New York.

c. On or about February 20, 1996, the defendants ROBERT CATOGGIO and LOUIS MALPESO, JR. met with the Undercover Agent in Manhattan, New York.

d. On or about February 22, 1996, the defendants JOSEPH DIBELLA and LOUIS MALPESO, JR. met with the Undercover Agent in Manhattan, New York.

e. On or about February 26, 1996, the defendant JOSEPH DIBELLA provided financial statements and other information regarding First Colonial to the Undercover Agent.

Exodus Travel, Ltd. to be opened with Norfolk Securities, Inc., a securities brokerage firm.

g. On or about February 28, 1996, the defendants JOSEPH DIBELLA and ROBERT CATOGGIO, and others, caused the market price for First Colonial stock to be inflated by market manipulation.

(Title 18, United States Code, Sections 371 and 3551 et seq.).

COUNT TWO

24. Paragraphs 1 through 11 of this Indictment are hereby incorporated by reference and realleged as though fully set forth herein.

25. On or about February 28, 1996, within the Southern District of New York and elsewhere, the defendants LOUIS MALPESO, JR., JOSEPH DIBELLA, and ROBERT CATOGGIO, and others, did knowingly, willfully and unlawfully use and employ manipulative and deceptive devices and contrivances and directly and indirectly (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material facts and omit to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of conduct which would and did operate as a fraud and deceit upon members of the investing public and securities firms, in connection with purchases and sales of First

Colonial stock, by use of the instruments of communication in interstate commerce and the mails, in violation of Rule 10b-5 of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5 (1995).

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.).

COUNT THREE

26. Paragraphs 1 through 11 of this Indictment are hereby incorporated by reference and realleged as though fully set forth herein.

27. On or about and between February 20, 1996 and February 22, 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH DIBELLA did knowingly and intentionally travel in interstate commerce and use the facilities of interstate commerce with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, to wit, commercial bribery in violation of New York State Penal Law Section 180.03, and thereafter did promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(3) and 3551 *et seq*.).

A TRUE BILL

FOREPERSON

ZACHARY W. CARTER
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM DBD-34
JUN. 85

No. ____________

# UNITED STATES DISTRICT COURT

EASTERN District of NEW YORK

__________________ Division

THE UNITED STATES OF AMERICA

*vs.*

LOUIS MALPESO, JR., JOSEPH DIBELLA,

and ROBERT CATOGGIO, Defendants.

# INDICTMENT

*A true bill.*

______________________________ *Foreman*

*Filed in open court this* __________________ *day,*

*of* ____________ *A.D. 19* ______

______________________________ *Clerk*

*Bail, $* ____________